No. 04-03-00150-CV



KENDALL APPRAISAL DISTRICT,


Appellant



v.



CORDILLERA RANCH, LTD., et al.,


Appellees



From the 216th Judicial District Court, Kendall County, Texas 


Trial Court No. 02-300


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: July 23, 2003


REVERSED AND REMANDED; INJUNCTION DISSOLVED

 In this accelerated interlocutory appeal, Kendall Appraisal District argues the trial court
abused its discretion in issuing a temporary injunction. We agree and therefore reverse the trial
court's order, dissolve the temporary injunction, and remand the case to the trial court for further
proceedings consistent with this opinion.

Factual and Procedural Background


 After receiving notices of appraised value in May 2002, hundreds of property owners in the
Cordillera Ranch subdivision filed formal protests with the appraisal review board of the Kendall
Appraisal District. The protests were denied; and Cordillera Ranch, Ltd., the developer of the
subdivision, and over 500 property owners in the subdivision appealed to the district court. See Tex.
Tax Code Ann. § 42.01 (Vernon 2001). The owners complained of the denial of their applications
to designate their properties as "qualified open space land" pursuant to section 23.51 of the Tax
Code. Alternatively, they contended the proposed taxable valuation reflects unequal treatment of their
property when compared to other similar properties. In a supplemental petition, the owners alleged
that, after the appeal was filed, they paid under protest the full amount of the tax billed, see Tex. Tax
Code Ann. § 42.08 (allowing owner to pay taxes without forfeiting right to appeal); and alleged that
section 31.071 of the Tax Code requires the Appraisal District, which is the tax collector for Kendall
County and Boerne Independent School District, to retain the disputed tax payments pending final
determination of the appeal. The owners requested a temporary injunction requiring the Appraisal
District to place the disputed 2002 tax payments into a separate account. The trial court granted a
temporary injunction requiring the Appraisal District to create a "retainage fund" and place all 2002
tax payments collected on the properties at issue in the retainage fund until the amount in the fund
equals the amount of the disputed tax. The Appraisal District appeals. 

Scope and Standard of Review


 We review an order granting a temporary injunction for an abuse of discretion. Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). With respect to questions of fact, the trial court
abuses its discretion only if the record establishes it "could reasonably have reached only one
decision," and it failed to do so. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). However,
"[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts.
Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse
of discretion." Id. at 840.

Discussion


 The Appraisal District argues the trial court abused its discretion in finding a probable,
imminent, and irreparable injury. In response, the owners argue that the equitable requirement of
immediate and irreparable harm does not apply because they seek to enjoin a statutory violation.
Therefore, we must first determine whether the owners must establish the equitable requirements for
obtaining a temporary injunction. 

Applicability of Temporary Injunction Requirements


 As a general rule, an applicant seeking a temporary injunction must plead and prove "(1) a
cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable,
imminent, and irreparable injury in the interim." Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204
(Tex. 2002). The owners argue that the equitable requirements encompassed by the general rule do
not apply here because they seek an injunction to compel a governmental entity to perform a
mandatory statutory duty. We disagree. 

 The owners' argument was rejected by the Texas Supreme Court in Butnaru. See id. at 209-10. Like the owners here, the plaintiffs in Butnaru argued that they did not need to show lack of an
adequate remedy at law because courts have a duty to enjoin statutory violations. Id. at 209. The
court disagreed, distinguishing cases in which the party seeking injunctive relief relied on a statute
specifically authorizing such relief. Id. at 210. The court held that the right to injunctive relief must
be established under general equitable principles if the statute allegedly being violated does not
authorize injunctive relief. Id. 

 It is undisputed that the injunctive relief obtained by the owners is not expressly authorized
by the Tax Code. The owners argue, however, that specific statutory authority for the injunction is
provided by section 65.011(1) of the Texas Civil Practice and Remedies Code, which does not
expressly require either the lack of an adequate legal remedy or a showing of irreparable harm. (1) We
again disagree. As the Texas Supreme Court recently held, "although ... section 65.011(1) does not
expressly make the lack of an adequate legal remedy a prerequisite for injunctive relief, this
requirement of equity continues." Town of Palm Valley v. Johnson, 87 S.W.3d 110, 111 (2001) (per
curiam). Likewise, injunctive relief under section 65.011(1) requires "the showing of irreparable harm
otherwise required by equity." Id.

 In support of their argument to the contrary, the owners cite numerous cases, many of which
state generally that courts may provide relief when government officials fail to perform their
mandatory duties. See, e.g., Weber v. City of Sachse, 591 S.W.2d 563 (Tex. Civ. App.-Dallas 1979,
writ dism'd); City of Shoreacres v. State, 582 S.W.2d 211 (Tex. Civ. App.-Houston [1st Dist.] 1979,
writ ref'd n.r.e.); Inverness Forest Improvement Dist. v. Hardy Street Investors, 541 S.W.2d 454
(Tex. Civ. App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.). However, none of these cases suggest
that injunctive relief is available without a showing of imminent irreparable harm. See id. The owners
also cite cases in which a statutory violation was enjoined without the necessity of showing one or
more of the equitable requirements. However, in each of these cases, the injunction was authorized
by the statute allegedly being violated. See State v. Texas Pet Foods, Inc., 591 S.W.2d 800, 803 (Tex.
1979) (affirming injunction against violations of the Texas Clean Air Act, the Texas Water Quality
Act, and Texas Renderers' Licensing Act, each of which authorizes injunctive relief upon finding a
present or threatened violation of the Act); San Miguel v. City of Windcrest, 40 S.W.3d 104 (Tex.
App.-San Antonio 2000, no pet.) (affirming temporary injunction expressly authorized in section
211.012(c) of the Texas Local Government Code against violation of zoning ordinance without
showing injury); Gulf Holding Corp. v. Brazoria County, 497 S.W.2d 614, 619 (Tex. Civ.
App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (affirming injunction expressly authorized by Open
Beach Act to remove beach obstruction without showing of balancing of equities). (2)

 The one case that does appear to support the owners' position is Bexar County v. North East
Indep. Sch. Dist., 802 S.W.2d 854 (Tex. App.-San Antonio 1990, writ denied), in which this court
affirmed an injunction, despite the availability of an adequate remedy at law, and stated that "an act
in violation of a statute may be enjoined without a showing that the legal remedy is inadequate." Id.
at 859 (citing Tex. Civ. Prac. & Rem. Code Ann. § 65.011(1)). However, to the extent the holding
in Bexar County is based solely on this proposition, we believe it has been overruled sub silentio by
the Texas Supreme Court's recent decisions in Butnaru and Town of Palm Valley.

 In light of the foregoing, we hold that a party seeking a temporary injunction to compel a
governmental agent to perform a mandatory statutory duty must plead and prove either (1) a statute
expressly authorizing injunctive relief without a showing of a probable right to the relief sought or
imminent and irreparable harm or (2) both a probable right to the relief sought and a probable,
imminent, and irreparable injury. See Butnaru, 84 S.W.3d at 204. Here, because the owners did not
rely on a statute that expressly authorized injunctive relief without a showing of the equitable
requirements, they were required to prove both a probable right to the relief sought and a probable,
imminent, and irreparable injury. Id.

Probable, Imminent, and Irreparable Harm


 The Appraisal District argues the trial court abused its discretion in finding the owners
established probable, imminent, and irreparable harm. We agree. 

 Probable imminent injury requires proof of an actual threatened injury, not a speculative or
purely conjectural one. Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc., 156
Tex. 408, 295 S.W.2d 873, 879 (Tex. 1956). Fear or apprehension of possible injury is insufficient
to support a finding of imminent harm. Frey v. DeCordova Bend Estates Owners Ass'n, 647 S.W.2d
246, 248 (Tex. 1983); Friona Indep. Sch. Dist. v. King, 15 S.W.3d 653, 659 (Tex. App.-Amarillo
2000, no pet.). An irreparable injury is one for which the law provides no adequate remedy.
McGlothlin v. Kliebert, 672 S.W.2d 231, 232 (Tex. 1984). An existing remedy is adequate if it
provides full, practical, and complete relief. Blackthorne v. Bellush, 61 S.W.3d 439, 444 (Tex.
App.-San Antonio 2001, no pet.). The lack of an adequate remedy is not shown by the mere fact that
the remedy provided would involve more expense or delay. See Canadian Helicopters Ltd. v. Wittig,
876 S.W.2d 304, 306 (Tex. 1994). 

 The owners argue they face imminent harm because the Appraisal District is disbursing the
disputed tax payments to the taxing units, which units may cancel their tax collection contracts with
the Appraisal District, which would then be left "without any ability to pay a judgment." This
argument assumes the owners' novel interpretation of section 31.071 of the Texas Tax Code is
correct and requires the Appraisal District to immediately refund the disputed tax payments upon the
owners' successful completion of the appeal. Even if we were to make this assumption, however,
there is simply no evidence in the record to support a finding that the Appraisal District would be
unable to comply with an order to immediately refund the disputed tax payments - there is no record
evidence of the Appraisal District's tax collection cycle or the average amount of funds on hand; nor
is there evidence even suggesting that the taxing units are contemplating cancelling their contracts
with the District. Consequently, the claimed injury is purely conjectural and thus insufficient to
support a finding of probable imminent harm. See Dallas General Drivers, 295 S.W.2d at 879; Frey,
647 S.W.2d at 248. 

 Moreover, the owners' argument incorrectly assumes success on the merits of their appeal
will yield a money judgment against the Appraisal District in the amount of the disputed taxes. Even
if the owners had prayed for a money judgment, which they have not, the Tax Code does not provide
for one. If the owners establish their claim for open-space land designation, the court will render a
judgment declaring the property so qualifies. See Dallas Cent. Appraisal Dist. v. Seven Inv. Co., 835
S.W.2d 75, 79 (Tex. 1992). And if the owners establish an unequal appraisal, the court will render
a judgment fixing the appraised value in accordance with the law. See Tex. Tax Code Ann. §§ 42.25
42.26 (Vernon 2001).

 The owners also failed to submit any evidence or argument establishing that the remedies
provided in the Tax Code are inadequate. After the final determination of an appeal, the chief
appraiser and the assessor for each taxing unit are required to correct the appraisal and tax rolls in
accordance with the court's determination. Tex. Tax Code Ann. § 42.21; Dallas Cent. Appraisal
Dist. v. Seven Inv. Co., 835 S.W.2d at 79 (if court determines property qualifies as open-space land,
"the chief appraiser of the appraisal district, not the court, determines the open-space appraised value
of the land"). The tax assessor then sends corrected or supplemental tax bill. Tex. Tax Code Ann.
§ 42.42. If the final determination of the appeal decreases the property owner's tax liability and he
has already paid the taxes, "the taxing unit shall refund to the property owner the difference between
the amount of taxes paid and amount of taxes for which the property owner is liable." Tex. Tax
Code Ann. § 42.43(a). If the taxing unit fails to timely pay a refund, the property owner is authorized
to sue and may recover interest, costs, and attorney's fees. Tex. Tax Code Ann. § 42.43(d).
Alternatively, the property owner may apply to the tax collector (in this case the Appraisal District)
for a refund under section 31.11 of the Tax Code, which requires the tax collector to refund payments
determined to be excessive from current tax collections or from funds appropriated by the taxing unit
for making refunds. Tex. Tax Code Ann. § 31.11. Because the Tax Code provides full, practical,
and complete relief for taxpayers who ultimately prevail in their appeals, the owners have failed to
show they lack an adequate remedy at law for recovering any taxes they may be found to have
overpaid.

 Because the record contains no evidence of probable imminent and irreparable harm, the trial
court abused its discretion in issuing the injunction. See Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.
1998). Because of our resolution of this issue, we need not and do not decide whether the owners
showed a likelihood of success on the merits of their appeal or whether the trial court erroneously
construed or applied section 31.071 of the Tax Code.

Conclusion


 Because the trial court abused its discretion in finding an imminent and irreparable injury
without supporting evidence, we reverse the trial court's order, dissolve the temporary injunction,
and remand the case to the trial court for further proceedings consistent with this opinion. 



 Sarah B. Duncan, Justice
1. Section 65.011(1) provides that "[a] writ of injunction may be granted if (1) the applicant is entitled to the
relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant." Tex. Civ.
Prac. & Rem. Code Ann. § 65.011(1) (Vernon 1997).
2. At oral argument, the owners also cited Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547 (Tex. 2000), and
Osborne v. Keith, 142 Tex. 262, 177 S.W.2d 198 (Tex. 1944). However, both Blue and Osborne discuss whether a
taxpayer who has suffered no distinct injury has standing to sue in equity to enjoin the illegal expenditure of public
funds. Bland, 34 S.W.3d at 556; Osborne, 177 S.W.2d at 200. As this line of cases makes clear, standing will be
conferred on the taxpayer, despite the absence of a distinct injury, precisely because imminent and irreparable harm
will likely befall the taxpayer in the absence of equitable intervention See City of Austin v. McCall, 95 Tex. 565, 577,
68 S.W. 791, 793 (Tex. 1902) ("'The right has been recognized by the state courts in numerous cases, and from the
nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt
action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the
application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those
corporations assume, in excess of their powers, to create burdens upon property holders.'") (quoting Crampton v.
Zabriskie, 101 U.S. 601, 609 (1880)) (emphasis added). This line of cases thus does not authorize equitable relief in
the absence of imminent and irreparable harm.